WILLIAM NEWELL, Appellant, *v.* EZRA WHEELER, FREDERICK LACEY, THOMAS ROUNDEY, Jr., and OBADIAH W. F. RANDOLPH, Respondents.

*Patent Right—Contract to pay toll for use of a machine means actual use, not capacity.*

A contract for the sale of a patent right in which among other things the assignee, as a part of the consideration of purchase, agrees to pay a certain price per bag for all coffee which shall be passed through the patented machine—does not bind the purchaser to pay any more toll than would be due on the amount actually run through the machine; and when an action is brought to recover toll on an amount of coffee which might have been run through, but which was not, the Plaintiff cannot recover.

This is an appeal from a judgment absolute against the Plaintiff, rendered by the General Term of the Superior Court of the city of New York, reversing, with costs, a judgment entered in his favor, upon the verdict of a jury, for $21,916.55, and dismissing his complaint as not stating facts sufficient to constitute a cause of action.

The suit was brought upon the following contract, made between the parties, March 17, 1858, under seal:

"Whereas, William Newell, of the City of Philadelphia, and State of Pennsylvania, did obtain letters patent of the United States for a certain invention, styled 'W. Newell's Patent Coffee-Cleaning and Polishing Machine,' which letters patent bear date November, 3, 1857, for a period of fourteen years from that date; That for and in consideration of the sum of *five thousand dollars* in hand paid, the receipt of which is hereby acknowledged, and *the further payment* of ten cents net, free from any charge or assessments of any kind, for each and every bag of merchantable coffee, and six cents for every bag of skimmings that passes through Wm. Newell's cylinders or process; and the said Wheeler, Lacey & Co., and O. W. F. Randolph, or their successors, shall keep an accurate account of every bag of coffee that passes under the said Newell's process, and furnish him, his heirs or assigns, with

monthly returns of said product, verified under oath, and pay over in cash on the first day of every month to the said W. Newell, his heirs or assigns, his or their share of earnings, said ten cents and six cents for each and every bag of coffee as before stipulated for; and if the said Wheeler, Lacey & Co., and O. W. F. Randolph, fail to perform any part of this agreement, then this contract to be void and of no effect, and the payment of five thousand dollars aforesaid, together with the large iron cylinder, to be furnished by the said W. Newell, be forfeited to him, his heirs or assigns. The said sum of five thousand dollars before named, and part of the consideration money under this contract, to be refunded to the said Wheeler, Lacey & Co., and O. W. F. Randolph, without interest, out of any excess of his, the said W. Newell, his heirs or assigns' share of earnings when they exceed two thousand dollars per annum; but no part of said five thousand dollars reverts back to said Wheeler, Lacey & Co., and O. W. F. Randolph, in liquidation of said five thousand dollars, until his, W. Newell, his heirs or assigns' share of earnings exceed two thousand dollars per annum aforesaid. And it is further conditioned, that if any misunderstanding or litigation ensues or other contingencies arise between the said Wheeler, Lacey & Co., and O. W. F. Randolph, or their successors, that the said W. Newell, his heirs or assigns, shall not be prejudiced thereby, *but that his or their interest shall be inviolate, by keeping in active operation the machinery herein contemplated and used by the said Wheeler, Lacey & Co., and O. W. F. Randolph, or their successors, so that it be made available and productive, and payable as hereinbefore provided for.*" "And it is further conditioned that no sale or transfer of said patent right herein referred to, on the part of the said Wheeler, Lacey & Co., and O. W. F. Randolph, their heirs or assigns, shall be valid without the written consent of the said W. Newell, his heirs or assigns, so expressed by endorsement on, and made part of, this agreement.

" In consideration of the foregoing condition, and compliance therewith on the part of the said Wheeler, Lacey & Co., and O. W. F. Randolph, the said W. Newell, for himself, his heirs or

assigns, do hereby sell, assign, and set over to the said Wheeler, Lacey & Co., and O. W. F. Randolph, their heirs or assigns, the exclusive right to use said patent right herein named for cleaning and polishing coffee for the States of New York and Connecticut, and for part of the State of New Jersey, say, excepting the Counties of Camden and Gloucester therein, which is hereby reserved to the use of the said W. Newell, his heirs or assigns.  And it is further agreed that if the said Wheeler, Lacey & Co., and O. W. F. Randolph, find it expedient within three years from the date of this instrument to commute the payment of ten cents and six cents for each and every bag of coffee as aforesaid, by paying in lieu thereof twenty thousand dollars, deducting therefrom the five thousand dollars now paid and herein acknowledged, it shall be considered in full satisfaction for the same, and a quit-claim deed made accordingly.  And it is further conditioned that if any infringement is made on the right of the patentee affecting the interests of the other parties hereto, that he, the said W. Newell, his heirs or assigns, shall prosecute, at his or their own expense, all such offenders.  And of any and all additional iron cylinders required by the said Wheeler, Lacey & Co., and O. W. F. Randolph, and not exceeding in capacity and of same structure and materials as the one now to be furnished as part of this agreement, said cylinders to be furnished by the said W. Newell, deliverable in Philadelphia, at a cost of say not exceeding six hundred dollars each, and payable by the said Wheeler, Lacey & Co., and O. W. F. Randolph, their heirs or assigns."

There was testimony given as to the amount of coffee presented for cleaning, and how much had been cleaned.  A question was made whether a failure to keep the machine in full operation was caused by the negligence and fraudulent operations of the Defendants or the worthlessness of the machine.  On these points the jury found with the Plaintiff, and gave him a verdict accordingly. The General Term holding that the Plaintiff could in no case recover upon the written agreement, reversed the judgment and ordered judgment absolute for the Defendant.

*Elbridge T. Gerry* for the Appellant.

*Wm. D. Booth* for the Respondents.

HUNT, J.—The question in the present case arises from the written agreement set forth in the complaint. The Plaintiff claims that the instrument contains an implied agreement on the part of the Defendants, that they will keep the machine in constant operation, provided they can with reasonable effort obtain employment for it. It is not claimed that there has been any greater actual use for the machine than has been accounted for. The claim is made that the Defendants were bound to keep it in operation, and were bound to pay the toll upon the amount of coffee that could have been run through it, whether it was actually so run or not. The judge at the circuit decided this question in favor of the Plaintiff. He held further that if the Defendants were unable to procure coffee to be run through this mill, and that inability was the result of their own misconduct in managing the machine, they were still bound to pay the toll to the Plaintiff in the same manner as if the grain had actually been run through the mill. The same question was stated by the judge at the Circuit in another form, thus : " The question for the jury to decide is whether these Defendants have, by any wrongful act of theirs, as far as Mr. Newell is concerned, raised in the minds of the dealers in coffee a pre judice against this machine, and caused them to decline having it used in the preparation of their coffee. If they have been guilty of such wrongful act, then they are to be considered in the light of having had the opportunity and option of putting through the machine such coffee as they had received from its owners for cleaning." As held at the Circuit, the Defendants, in addition to their express undertaking, impliedly agreed that they would keep this machine in constant operation in cleaning coffee, and that they would not by any wrongful act of theirs raise a prejudice against it in the minds of dealers, which should operate to prevent its use. The jury held that they had violated this agreement or some part of it, and held them liable for the tolls upon such amount of coffee as the machine was proved to be capable of cleaning.

Let us examine this agreement. Its first branch was intended mainly to express the consideration of the assignment and the

manner of its payments, which is of five thousand dollars in hand paid, and the payment of ten cents for every bag of merchantable coffee, and six cents for every bag of skimmings, that passed through the machine. Wheeler & Co. were bound to keep an accurate account of every bag of coffee that passed under the process, and make monthly returns and pay in cash on the first of every month the six cents and ten cents above stipulated for. If the Defendants fail to perform, then the contract is to be void; and the $5,000 aforesaid, together with the large iron cylinder to be furnished by Newell, shall be forfeited to him. Thus far this agreement purports to contain no stipulations on the part of the Defendants; in form they are all on the part of the Plaintiff. It does, however, contain several implied agreements on the part of the Defendants, to wit: that they will pay the ten cents and six cents per bag for cleaning the different kinds of coffee mentioned that passes through the cylinder; also that they will furnish accurate monthly accounts; and also that they will pay over in cash, on the first day of each month, the amount before stipulated to the Plaintiff; and also that, if they fail to perform any part of the agreement, they will forfeit all their rights under it, together with a large iron cylinder to be furnished by the Plaintiff. The instrument recites that these things are to be done by the Defendants; they are executory; they are for the benefit of the Plaintiff; and when the Defendants receive the instrument in which it is said they are to be done by them, and take the advantages given by it, they should be held bound to perform what is therein recited to be their obligation, although there are no words of express agreement on their part. They are not conditions, but are accepted recitals that certain things are to be done by the Defendants. In like manner, by implication, is herein contained an agreement by the Plaintiff, that he will furnish a large iron cylinder, to be used by the Defendants in the prosecution of the business. He does not in words agree to furnish it, but I think he does by implication.

It is then provided further, that when the amount of tolls thus coming to the Plaintiff, under the stipulations above given, shall exceed $2,000 per year, the $5,000 paid to him by the Defendants,

as first mentioned, shall be refunded by him to the Defendants. It would be quite unreasonable to contend that this clause contains an implied agreement that at some future period the amount of such tolls or earnings should be made to exceed such sum of $2,000 per year, and the Plaintiff does not so claim.

Thus far the main object has evidently been to specify the consideration that was to be paid to the Plaintiff in gross, and from the earnings of the machines. With the same object still in view, knowing the trouble and embarrassment caused by the quarrels of partners in business to all who are connected with them, and having apparently great confidence in the success of his invention, the Plaintiff inserts a " further condition," that if ligitation or misunderstanding occurs between the Defendants themselves " or their successors," the Plaintiff shall not be prejudiced thereby, but his interest shall be inviolate by keeping in active operation the machinery herein contemplated, and used by the Defendants or their successors, so that it be made available, payable, and productive, as hereinbefore provided for." Passing by the condition that this is a mere condition, it is an agreement not impliedly, but in words, that there shall be no prejudice to the Plaintiff's earnings or tolls, to arise by stoppage of the machinery from dissension among its owners. When the machine would run, except for that cause, the Plaintiff must receive the same benefit as if it did run. The observation naturally occurring on this clause is, I think, against the Plaintiff's claim. Here was one contingency not unlikely to arise, which would result in a stoppage of the machine, and he required the Defendants to bear the loss of such stoppage. Many other contingencies might arise; as that the operation should prove too expensive ; it could be done better or cheaper by other machines or processes ; the Defendants might not choose further to prosecute the enterprise; they might neglect their business ; they might be interested in some other similar patent, as to which the Plaintiff required no guaranty. The assumption is that he expected himself to take the risk on those points. He was confident of the merits of his invention, and was willing to trust to the self-interest of his grantees in keeping it in operation,

except when a stoppage should be caused by litigation, or misunderstanding between themselves. It will be perceived that this clause contains the first and only intimation of the extent of the machinery to be used by the Defendants, and it is somewhat uncertain what was intended to be understood on that subject. The opening recital states that the Plaintiff had obtained a patent for an invention, styled "Newell's patent coffee-cleaning and polishing machine." A clause before quoted refers to a "large iron cylinder" to be furnished by Newell, and the agreement transfers all Newell's interest in the patent for the States of New York, Connecticut, and the State of New Jersey, excepting certain counties in the latter State. It nowhere appears what machinery was intended to be used, or who, or what one the successors above referred to. It cannot, however, be useful further to consider the difficulties of this clause, and I leave this view of it with the remark that it affords no countenance to the Plaintiff in the present suit.

A further consideration is imposed that no sale shall be made of any right under the patent without the written assent of Newell, and the instrument then proceeds to set over and assign to the Defendants the exclusive right to use said patent for New York, Connecticut, and parts of New Jersey. A provision was then made for commuting the payment of the ten cents and six cents toll, by the payment of $20,000 less the $5,000 already paid, equal to $15,000, and when done, a quit-claim deed was to be delivered. The other provisions are not material to be recited.

A strong objection to the Plaintiff's construction of the contract arises under the clause of the contract last quoted.

The contract provides that upon payment of the sum of $15,-000 the Defendants shall be entitled to a quit-claim deed, and shall be forever discharged from the liability for tolls. The Plaintiff, however, has received a verdict of $17,000 for non-use and non-payment thereof during a period of five years. Upon the claim of interpretation made by the Defendants, that this machine should be run as their interests or their convenience required, this provision was reasonable and sensible. If they found it to

be a great undertaking, and were unwilling to pay such large tolls, they might commute at this intermediate sum, and the Plaintiff would also then receive in gross a sum agreed upon as a fair compensation for his patent.

But, upon the Plaintiff's construction, he could hardly have entered into the stipulation. By his present claim, the Defendants were bound to run the machine to its utmost capacity during the existence of the patent, and to pay him his toll therefor. He found that the machine would clean 209 bags a day, which, at the lowest toll, would give him $3,762 a year. This extended through the fourteen years of the patent would amount to more than $50,000. Having this legal right, which would produce him nearly four times that amount, he would hardly have consented to abandon it for $15,000, at the option of the Defendants. If the Plaintiff's theory is correct, I do not see upon what principle his right of recovery is limited to the results of one machine in the city of New York. The people of Connecticut and New Jersey might desire to be benefited by this coffee-cleaning process as well as those of New York, and why should not machines be erected in Trenton, and New Haven, and Hartford, as well as in the city of New York ? Why should not other sections of this State, as Albany, Buffalo, and Rochester, have the machine erected in those cities ? They are large commercial towns, and, it is believed, receive large importations of coffee from abroad, although not equal in this respect to the city of New York. The assignment is for the entire territory of the States mentioned, with the reservation of the counties of New Jersey. The agreement contemplates the erection of some other machinery, which, to a limited extent, is to be furnished at a specific price.

I see nothing in this agreement to indicate that the parties were not to have the same rights and to be under the same obligation throughout all the district as were imposed for the city of New York. That the Defendants assumed a liability to pay tolls for all the coffee that could be thus cleaned, could only be proved by clear and explicit language.

Again, it was contemplated that sales should be made of the

interests of the Defendants in the patent, to which the Plaintiff
would assent in writing; and it is probable that sales of ter-
ritorial rights were contemplated, as is usual in the case of patent
interests.   The "successors" of the Defendants are spoken of in
many places in the contract.   The expectation of the parties is
apparent that there might be divisions and subdivisions of these
interests; that the Defendants would manage, in part or for a
time, when they might be succeeded in the management by others,
either for the whole or part of the territory embraced in the
patent.   The Plaintiff's right of toll, as claimed by him, would
extend to all these persons, over all the territory and through all
changes, wherever there was coffee which could be the subject
of the cleaning process; the Defendants, or their successors, must
have a machine ready to clean it if offered, in default of which
they must pay the toll required.   I do not think that this was in
the view of the parties, or that it is the legal result of the lan-
guage used by them.   The Plaintiff no doubt expected to receive
compensation for the use of his patent, and for this he relied upon
two agencies.   He confidently believed that the patent was a
valuable one, that it would be for the interest of the Defendants
to use it largely and freely, and in so doing large tolls would
necessarily come to him.   He protected himself also to the extent
of $5,000, in any event.   That amount the Defendants paid, and
that amount, together with the cylinder, they forfeited, in case
they failed to perform the contract.

I am quite satisfied that by the terms of the instrument de-
clared on, the Defendants did not make the agreement claimed
by the Plaintiff and held by the judge at circuit, to wit: that
they would operate the machine to its full capacity of cleaning
coffee, and that they would do nothing to prejudice the coffee
dealers against its use.   The expressions relied upon do not sus-
tain such a claim.   McIntyre *v.* Belcher (32 Law Journal, New
Series, Part II., C. P., p. 254; 14 Com. B., N. S., p. 654) is not
an authority to the contrary.   There A. sold to B. his doings and
his practice as a surgeon, B. agreeing to pay A., at the end of
each year, for four years, the one-fourth part of his earnings.   B.

wilfully disabled himself from carrying on the business, and from making any earnings whatever. The Court held him liable. Erle, Ch.J., said : " Our duty in construing an agreement is to give effect to the intention of the parties, and we must look at the surrounding circumstances, if they are before us ; if not, at the nature of the transaction itself." Byles, J., said : " The only consideration for the sale of the drugs and the practice is the share which the Plaintiff is to have in the proceeds of the business for four years. It is not, therefore, unreasonable to hold that there is an implied agreement on the part of the Defendant not to do anything which would entirely deprive the Plaintiff of the benefit of the agreement."

The present case is quite different. There is here an additional consideration in the gross sum paid upon the making of the contract, and the " surrounding circumstances " point strongly to the opposite conclusion. In Wemple v. Stewart (22 Barb. 154, 160), Paige, J., says : " The agreement is to deliver all the merchantable spruce plank *they may saw, &c.* These words are not promissory in their nature, nor do they import a promise or undertaking to saw any plank. To construe this clause of the contract as requiring the Defendants to saw all the plank they should be able to saw, would be making a new contract for the parties."

In the recent case of the President, &c., of the Delaware and Hudson Canal Company v. The Pennsylvania Coal Co., a decision was rendered by Judge Nelson, in the United States Circuit Court, upon a contract involving similar general principles with the one before us, and in accordance with the views I have indicated.

It may also be doubted whether the particular clauses relied upon by the Plaintiff are anything more than conditions to justify a forfeiture, and upon which no action will lie. They are called " conditions," and it is not certain that they were intended by the parties to confer the right of action claimed (Culver v. Sisson, 3 Coms. R. 264 ; Palmer v. Fort Plain & C. R. R. Co., 11 N. Y. R. 376).

In the view I take of the case, the Plaintiff cannot maintain his action, and a discussion of the rule of damages is unnecessary.

The order of judgment absolute in favor of the Defendants should be affirmed.

All concur.

Affirmed.

JOEL TIFFANY,
State Reporter.