## THE AURORA FIRE INSURANCE CO.

*v.*

## JAMES W. EDDY.

1. INSURANCE—*keeping " buckets filled with water " in the building insured.* It has been held, that under a stipulation in a policy, that the assured shall keep a certain number of "buckets filled with water" in the building insured, "ready for use at all times, in case of fire," if, from freezing or other unavoidable causes, a literal compliance therewith should become impossible, the policy shall not, for that reason, become void, but it would still be incumbent on the assured to show that the requisite number of buckets, in good and serviceable condition, were at the places designated in the policy, ready for instant use.

2. SAME—*prohibition of smoking.* Under a clause in a policy, "that smoking shall be strictly prohibited in or about the buildings" insured, the mere fact that there may have been smoking therein, but without the knowledge of the assured, and contrary to his directions, will not operate to discharge the company. It is enough that the assured had prohibited the act, and used reasonable precautions to prevent it.

3. SAME—*of a change of title—what constitutes—of a mortgage.* It has been held, that a mortgage upon insured premises is not a sale, alienation, conveyance, transfer or change of title, within the meaning of a clause in a policy which prohibits a transfer or change of the title without the consent of the insurer.

4. And this rule is especially applicable where the assured held only an equity of redemption in the insured premises, the same being mortgaged

at the time the policy was given, and he merely executed another mortgage to a different person, and for a different amount, and applied the proceeds to the payment of the prior incumbrance, and to other purposes.

5. SAME—*rule of construction.* The right to insist upon the forfeiture of a policy under such a prohibitory clause is *stricti juris.* Liberal intendments and enlarged constructions will not be indulged in favor of such forfeitures. The objection must be brought clearly within the forfeiting clause or it will not avail.

6. SAME—*of a change in the use of the premises.* Where a building is being used as a "flax factory," and is insured as such, the assured may properly erect therein and operate machinery for the manufacture of rope, that mode of using the building being embraced in the term "flax factory," and is not within a clause in the policy prohibiting a change in the character and degree of the risk.

7. SAME—*representations by agents—how far binding on the company.* Even if the use of the building for the manufacture of rope, when it had been insured as a "flax factory," could be regarded as a violation of the terms of a condition in the policy in respect to increase of hazard, still, where the agent of the company, who was authorized to take risks, in answer to an inquiry by the assured, at the time of issuing the policy, assured him such use of the premises would not be in violation of the contract—that the term "flax factory," used in the policy, was broad enough to include the manufacture of rope, the company would be estopped by such declaration of their agent.

8. The agent in such case would be acting within the scope of his authority. Being authorized to take risks, an insurance agent is thereby empowered to give a construction to the written portions of a policy issued by him, at least.

9. SAME—*of a warranty as to the use of stoves in the building—whether continuing.* An applicant for insurance upon a building was asked, "How is the building warmed? If any stoves and pipes, how are they secured?" The answer was, "No stoves used." This was held to be a representation only as to the use of stoves in the building at that time, and was not a continuing one, nor a warranty that stoves should not be used for warming purposes.

10. INSTRUCTIONS. It is improper to instruct a jury that a party, in order to recover, must prove that he has "substantially complied with his contract." Such a form of instruction is calculated to mislead a jury.

11. EVIDENCE—*promise of the officers of an insurance company to pay a policy.* It is competent, in an action upon an insurance policy, for the plaintiff to prove that the president and secretary of the company promised to pay the loss.

APPEAL from the Circuit Court of DeKalb county; the Hon. THEODORE D. MURPHY, Judge, presiding.

This was an action of assumpsit, brought by James W. Eddy, against the Aurora Fire Insurance Company, to recover upon a policy of insurance upon a building used as a "flax factory," for a loss occasioned by the destruction of the property by fire.

The policy, among other things, contained the following clause: "It is expressly agreed that the assured is to keep eight buckets filled with water on the first floor, where the machinery is run, and four in the basement by the reservoir, ready for use at all times in case of fire. Also, that smoking shall be strictly prohibited in or about the buildings." It also provided, that "if the title of the property is transferred or changed, or the policy is assigned without written permission hereon, this policy shall be void."

Other features of the policy, involved in the controversy, are fully disclosed in the opinion of the court.

A trial in the court below resulted in a verdict and judgment for the plaintiff. The company appealed.

Mr. B. F. PARKS, for the appellants.

In answer to a question on the subject of the mode in which the building was warmed, in the application, the assured answered that no stoves were used, yet afterwards stoves were used in the building for warming purposes. This was a violation of the contract. *Schmidt* v. *Peoria Mut. Fire Ins. Co.* 41 Ill. 296; *Aurey* v. *Commonwealth Ins. Co.* 10 Pick. Mass. 535; *Merwin* v. *Middlesex Mut. Ins. Co.* 21 Pick. 162; *Murdock* v. *Chenango Mut. Ins. Co.* 2 Comst. 210.

There was a transfer of the title, in violation of the terms of the policy. *Dix* v. *Mercantile Ins. Co.* 22 Ill. 272; *McLoren* v. *Hartford Fire Ins. Co.* 1 Selden, 151; *Dreher* v. *Ætna Ins. Co.* 18 Mo. 128.

In the case of *Western Massachusetts Ins. Co.* v. *Riker,* 10 Michigan, 279, the court hold the following language : " A policy of insurance containing a condition that, in case of any sale, transfer or change of title in the property insured, such insurance shall be void and cease, is voided by a conveyance which is absolute in form, though given as security for a debt, merely, and this, though only an undivided interest in the property insured is conveyed."

See, also, *Barnes* v. *Mut. F. Ins. Co.* 51 Me. 110 ; *Hartford Fire Ins. Co.* v. *Ross,* 23 Ind. 179 ; *Ayres* v. *Hartford Fire Ins. Co.* 17 Iowa, 176.

It was improper to allow the plaintiff below to prove that the agent who issued the policy told him he could erect and operate machinery for making rope in the " flax factory." *Schmidt* v. *Peoria Marine & Fire Ins. Co.* 41 Ill. 295 ; *Mayor, etc. of New York* v. *Brooklyn Mut. Ins. Co.* 41 Barb. 231 ; *Boggs* v. *Am. Ins. Co.* 30 Mo. 63 ; *Lee* v. *Howard Fire Ins. Co.* 3 Gray, 583 ; *Ill. Mut. Ins. Co.* v. *O'Neil,* 13 Ill. 89.

Mr. CHARLES HITCHCOCK, also for the appellants.

Messrs. WHEATON & McDOLE, for the appellee.

Although the assured executed a deed, absolute in form, he took a defeasance which rendered the transaction only a mortgage. *Delahay* v. *McConnel,* 4 Scam. 157, and cases there cited ; *Coates* v. *Woodworth,* 13 Ill. 654 ; *Miller* v. *Thomas,* 14 Ill. 428 ; *Tillson* v. *Moulton,* 23 Ill. 648 ; *De Wolf* v. *Strader,* 26 Ill. 225 ; 28 Ill. 149, 277 ; 32 Ill. 475.

The giving of a mortgage by the assured is not such an alienation, or transfer of title, as will avoid the policy. *Masters* v. *Madison Co. Mut. Ins. Co.* 11 Barb. 224 ; see *Benbank* v. *Rockingham Mut. Fire Ins. Co.* 4 Foster (N. H.) R. 550 ; *Smith* v. *People's Bank,* 11 Shep. (Me.) 185 ; *Trumbull* v. *Portage Mut. Fire Ins. Co.* 12 Ohio, 365 ; *Tittemore* v. *Mut. Ins. Co.* 20 Vt. 146 ; *Holbrook* v. *Am. Ins. Co.* 1 Curtis (Cir. Co.) 193 ; *Jackson* v. *Mass. Mut. Fire Ins. Co.* 23 Pick. 418 ; *Lazarus* v. *Commonwealth Ins. Co.* 19 Pick. 81 ; same case in 5 Pick. 76 ; 2 Am.

Leading Cases, 561, note; *Locke* v. *North Am. Ins. Co.* 13 Mass. 61; *Higginson* v. *Dale,* 13 Mass. 96; *Gordon* v. *Fire & Mar. Ins. Co.* 2 Pick. 249; *Crownover* v. *Mut. Ins. Co. of Albany,* 1 Comst. 290; *Com. Ins. Co.* v. *Spankneble,* 52 Ill. 53.

It is claimed by appellants that the policy was avoided by the putting of rope machinery into the mill after the policy was issued.

The description of the premises in the application and policy is, three story stone flax factory, etc. The description is certainly broad enough to cover any kind of manufacture of flax into anything else, and warrant its use for any purpose which a flax factory might be adapted to, the manufacture of flax into rope, or anything else, and the use of any and all necessary machinery therefor, and there is nothing in the policy or application which limits such use. There is no prohibition in the policy or application of the manufacture of rope, and nowhere any warranty or representation that rope should not be manufactured, or machinery therefor put in. The very terms of the description involve the idea that rope may be manufactured, if rope is manufactured in a flax factory; and certainly no warranty will be implied for the benefit of the insurance company. *Lounsbury* v. *Protection Ins. Co.* 8 Conn. 499; *New York Equit. Ins. Co.* v. *Langdon,* 6 Wend. 623; *Pim* v. *Reid,* 6 Man. and Grang. 1 (46 Eng. C. L. 1); *Blood* v. *Howard Fire Ins. Co.* 12 Cush. 172.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This case was previously before this court, and is reported in 49 Ill. 106. It was then reversed, because erroneous instructions were given. There was a stipulation in the policy, that the assured should keep eight buckets filled with water on the first floor where the machinery was run and four in the basement, by the reservoir, ready for use at all times in case of fire. In considering the case, when previously before us, we held, that a reasonable construction of this clause required,

that while, from freezing or unavoidable causes, a literal compliance with the warranty might have been impossible, and could not have been in the contemplation of the parties, still, it was incumbent on the assured to show that the required number of buckets, in good and serviceable condition, were at the places designated in the agreement, ready for instant use.

This being the requirement, it devolved upon the assured to prove that he had complied therewith.

On that question, there was some contrariety in the evidence, which the jury were required to reconcile, or, if unable to do so, then to give weight to such as they believed to be true.

In such cases, it is the province of the jury to carefully weigh the whole of the evidence, and to find according to its weight, and the presumption is, that they have done so, unless we see from the record that they misunderstood or disregarded the proof. The court will not disturb their finding on any question, unless it appears clearly to be unsupported. In this case, while we might have arrived at a different conclusion, we are not prepared to say that there were not the required number of buckets in their places, in good order and ready for instant use.

The testimony on this question introduced by appellee is more positive and affirmative in its character than that of appellants. The witnesses of the latter, in the main, only say they did not see the buckets, but fail to state that they had searched for the buckets, or had their attention called to the matter. It is true, that two of them say they had, at one time, occasion to use some buckets but only found six. This may have been true, and the proper number still have been in the mill. Dodds, on his examination in chief, seems to be positive as to the want of buckets, but the value of this testimony is greatly impaired by his cross examination, when he was not at all positive on the subject. On the other hand, appellee's witnesses all examined expressly to see if the buckets were there. At most, it seems to be no more than doubtful whether the buckets were all there, but it is by no means clear, nor is

there a clear preponderance of evidence, that there was not the requisite number.

It is next urged that there was smoking allowed in the factory, contrary to the stipulation in the policy. It was agreed, that smoking should be strictly prohibited in and about the premises. Eddy swears he prohibited smoking in and about the buildings, and this was a literal compliance with his part of the agreement to prohibit smoking. In the case of *The Insurance Co. of North America* v. *McDowell*, 50 Ill. 121, it was stated, in answer to a question propounded to the assured, and which became a part of the conditions upon which the policy was issued, that smoking was not allowed. And it appears there had been smoking by some of the employees about the mill, but as soon as the attention of the assured was called to the fact that it was contrary to the terms of the policy, he forbid it, and put up a notice that it was not allowed. It was there held, that in such a case the assured only undertakes that he himself will not do the act, or allow others to do so, if by reasonable precaution he can prevent it. In this case appellee prohibited smoking, and there is no evidence that he had any notice that his orders had been disregarded, so as to require him to resort to other and more energetic steps for its prevention. He did not agree that, if there should be smoking in or about the buildings, the policy should be void. He, or any man who is at all qualified to transact the most ordinary business, would not enter into such an engagement, as strangers and others over whom he had no control were liable to smoke about the buildings. Had the evidence shown that his orders were disregarded, and that it had come to his knowledge, then a different question would have been presented for our consideration. But the jury were, under the evidence before them, warranted in finding appellee had used reasonable efforts to prevent smoking in or about the buildings.

It is next urged that there was a violation of the condition, that if the title to the property should be transferred or changed, the policy should be void. It appears that when

220          AURORA FIRE INS. CO. *v.* EDDY.     [Sept. T.,

Opinion of the Court.

the property was insured Eddy was only the owner of the equity of redemption, Town then holding a mortgage on the premises, and loss, if any, was payable to Town, as his interest might show. Subsequently, appellee conveyed the premises, with other property, to Brown, and he, at the same time, and as a part of the same transaction, gave back to appellee a defeasance. This arrangement was made to enable Eddy to take up his mortgage to Town, which was done, and to procure means for other purposes. That this conveyance and defeasance only constituted a mortgage, is so obvious that the citation of authorities to establish the proposition is wholly unnecessary.

The question is then presented whether the execution of a mortgage on the premises was such a change or transfer of the property as rendered the policy void. It was but an equity of redemption that was insured, and this transaction still left appellee as fully the owner of the equity of redemption as he was at the time the insurance was effected. This was not, therefore, any change or transfer of title in appellee, but the only change was, that a different person held the mortgage, and it was, perhaps, for a different amount. But appellee's title was the same. But even if this were not so, still, the execution of a mortgage on the insured premises has been held, in the case of the *Commercial Ins. Co.* v. *Spankneble*, 52 Ill. 53, not to be a sale, alienation, conveyance, transfer, or change of title, such as is prohibited by a similar clause in a policy, and that the right to insist upon such a forfeiture is *stricti juris;* that liberal intendments and enlarged constructions will not be indulged in favor of such forfeitures. They must be brought clearly within the forfeiting clause. This, then, disposes of that question.

It is also urged that, by erecting and putting into operation machinery for the manufacture of rope increased the hazard and avoided the policy. It appears that at the time the risk was taken appellee notified the agent that he intended to put in rope machinery and he inquired whether it would affect the

policy, and was informed it would not, as the term flax factory was broad enough to embrace it, and we have no doubt he was correct in his definition of the term flax factory. It is believed to be quite common in such establishments to manufacture rope. It is a usual part of the business, and for that reason we incline to the opinion that this was no breach of the condition. But if it was, still the agent of the company assured appellee that it would not be, and shall appellee be misled when he is procuring a policy, and induced to take one that he intends, and the agent of the company assures him is broad enough to cover rope works, when it does not, and shall appellants now be heard to say, it is true our agent misled appellee, and induced him to do an act that we knew would avoid his policy, and thus enable us to obtain the premium when we incurred no risk? A court of justice would never sanction such a fraud, and thus enable parties to obtain and enforce such an unjust advantage. The agent was acting within the scope of his authority, and was, when appellants authorized him to take policies, empowered to give a construction to the written portion of the policy, if no more, and the company must be held estopped by this declaration of their agent. The instruction given on behalf of appellee, on that question, was proper.

It is also urged that there was a breach of the warranty in the policy, that no stoves were used. The question was asked, "How is the building warmed? If any stoves and pipes, how are they secured?" To this, it was answered, "No stoves used." Appellee agreed in the application, that if any untrue answer was given therein the insurance was to be void, and the policy of no effect. It is not contended that the buildings, or any part of them, were then warmed by a stove, but that one was subsequently used for the purpose, and that this representation was a continuing one, and was a warranty that a stove would not be used for warming purposes. In the case of *Schmidt* v. *The Peoria Fire & Marine Ins. Co.* 41 Ill. 295,

a similar representation was held not to be a continuing warranty that there should be no fire in the tannery, except under the boiler, as represented, during the life of the policy, but only a representation of the condition of the property at the time the policy was issued. We will not give a forced construction to language to enable a party to enforce a forfeiture, but rather adhere to the natural import of the words used. In this case the questions and answers are in the present and not in the future tense.

The use, then, of the stove was not a breach of the warranty. But if used recklessly it might be regarded as increasing the risk. Dodd testifies, that on the evening of the loss he made a fire and heated it red hot. But he says that the principal or foreman, or Eddy, was not there, and he says Ticknor, Turner or Eddy never directed him to make a fire in the stove, and he says "the bosses" did not want him to make the fire, but he was asked to do so by the girls who worked in the factory, that they might warm their feet before going home. Hoborn also testified, that he had seen fire in the stove and that he had seen it red hot. Other witnesses, who had better opportunities of seeing and knowing the facts, speak of seeing fire in the stove, but do not speak of its being unusually hot; and it was for the jury to say, whether it was used in a grossly negligent manner, and they have found it was not, and seem not to have given much weight to the evidence of Dodd and Hoborn, and from the uncertainty they manifest in reference to other matters about which they testify, we are not prepared to say that it was entitled to receive more weight than was given to it.

Appellants asked, but the court refused to give, this instruction :

" The jury are instructed, that so far as relates to the question of buckets, the policy requires that the plaintiff must keep ' at all times ready for use in case of fire, four buckets of water ' in the basement story and eight buckets on the middle floor; and the plaintiff must show affirmatively that

he did substantially so keep said buckets of water, and if he has not proved these facts, the jury must find for the defendant."

While this instruction may not be entirely incorrect, it was certainly calculated to mislead. What would amount to a substantial compliance with a contract, is very indefinite, and a question about which well founded differences might exist. This form of instruction was held to be erroneous when this case was previously before this court. We then but followed the decision on the same point in the case of *Taylor* v. *Beck*, 13 Ill. 336. The court below had already given an instruction, clear, definite, and free from misapprehension on this question. It was this:

"If the jury believe from the evidence that buckets could not be kept in the mill filled with water all the time, in accordance with the literal provisions of the policy, because of freezing, then a literal compliance with the said provisions of the policy concerning buckets, was not required and could not have been in the contemplation of the parties when the policy was made, but all that was required by the plaintiff in order to comply with such stipulation was to have the required number of buckets in good and serviceable condition at the proper places ready for instant use."

This is the construction we gave in the former opinion, on the previous trial. The instruction on this point, as well as all others, is free from objection. It presented the law of the case fairly to the jury.

It is objected that the court below permitted appellee to introduce evidence tending to prove a promise by the president and secretary of the company to pay the loss, after it had occurred. The evidence was proper for the consideration of the jury. It might reasonably be inferred from such evidence, that these officers had carefully examined the circumstances of the loss,

and become convinced it was a fair one, and was properly payable. It would certainly be evidence to that, if to no greater extent, and it was clearly admissible.

After a careful examination of this record, we fail to perceive any error requiring a reversal of the judgment, and it must, therefore, be affirmed.

*Judgment affirmed.*