Johnson, J.
The referee refused to find that, previous to the shipment in question, H. B. Claflin & Co. had been large shippers by the defendant’s line, and had been always accustomed to obtain bills of lading for the goods shipped; and also that the defendants were carriers upon a route terminating at Chicago, and not extending to Janesville, Wisconsin; and that between the latter points transportation had to be performed by separate and independent carriers. These matters the referee refused to find, on the ground that thqy were immaterial to the-rights of the parties. In this we think he erred, and for the following reasons: Claflin & Co. were the agents of the plaintiff in respect to the transportation of the goods in question. His directions to them were to ship the goods to him at Janesville, Wisconsin, by the defendant’s-line. The extent of the authority thus conferred, was considered in Nelson v. Hudson River Railroad Company (48 N. Y., 498). It necessarily extends to the making of such con *263 tracts as the agents, in the honest exercise of their discretion, see fit to make. The fact that the carriers and the agents employed have a habitual course of dealingin respect to contracts for transportation, is a material and important element in determining the construction to be put on their acts in any particular case. (Mills v. Mich. Cent. Railroad, 45 N. Y., 622.) The delivery by the agents of the plaintiff, to the carriers, was made upon no particular agreement made at the time. The packages were marked with the address of the plaintiff, and receipts were signed by the agents of the defendants, at their receiving depot at Mew York. These receipts were in a bound receipt book belonging to Claflin & Co., filled up by them, and signed by the agents of the defendants. They purport to be receipts, and not contracts for carriage. They were in the following form: “ Mew York, Oct. 2,1871. Received from H. B. Claflin & Co., in good order on board the M. D. for-the following packages, one case D. G-. marked H. S. Shelton Janesville, Wis.” and were signed lt Gleason.” In a day or two, but after the packages had been started on their way, the agents of the plaintiff, acting in accordance with the habitual mode of doing this business, sent the receipts to the defendant’s office, and procured bills of lading for the goods, the giving of which was entered on the several receipts. These bills of lading expressed the actual contract of carriage between the parties who in fact made the contract, the defendants on the one hand, and H. B. Claflin on the other. When the goods were delivered and the primary receipts given, each of the parties was acting in a habitual method, and with a habitual understanding of what they were engaged in doing. The receipts were presented and signed with the view and expectation on both sides, that bills of lading were in the usual course to be subsequently issued, expressing the intentions and engagements of the parties. This was their method of dealing, distinctly in their contemplation from the beginning, reasonable in itself and completely within the authority committed by the plaintiff to his agents, H. B. Claflin & Co. Any attempt on their part to claim a different agreement, *264 would have been- an act of bad faith ; because it would have been a departure from the understanding based upon the previous course of dealing of these parties. In the view we take of the relations and acts of these parties, the matters of fact which the • referee held to be immaterial, were plainly material, because they were essential to the disclosure of the actual contract of the parties. The bills of lading were obtained by the plaintiff’s agents, in the exercise of their original authority to contract with the defendants for transportation, and these controlled the rights of the parties and displaced the common-law relation, which otherwise might have existed between them.
The order of time in which the business was actually transacted, cannot be allowed to affect the rights of the parties. If H. B. Claflin & Co. were originally authorized to ship on bills of lading limiting the common-law liability of the defendants, the fact that receipts were taken in one stage of the business, intended by neither party as completing their dealing or contract," did not exhaust the authority. It was never so intended and cannot have that effect. The acts-of the parties must have operation as they were intended by the parties when they were done. The bills • of lading-excepted the risk of fire, and as it was by that danger that the property in question was destroyed, the defendants are free from liability, at least unless the loss was due to their negligence or fault. The only suggestion of fault is that the cars containing these packages, were unloaded on Sunday in Chicago. The case does not inform us that by the law of Illinois, where the loss happened, unloading- cars on Sunday was unlawful, and we have no means of knowing- such to be the fact, in respect to the laws of that State.- The common law, at least, teaches no such doctrine.
The judgment should be reversed and a new trial ordered, costs to abide the event.
All concur.
Judgment reversed.