Insurance Company v. Brodie.

---

## INSURANCE COMPANY V. BRODIE.

1. INSURANCE: *Avoiding policy: Waiver.*

The issue of a policy of insurance with a full knowledge or notice of all the facts affecting its validity, is equivalent to an assertion that it is valid at the time of its delivery, and is a waiver of any ground for avoiding it, then known to the insurer. And as to such ground the knowledge of an agent who receives the application on which the policy is issued, is regarded as the knowledge of the company for which he acts, and notice to him is notice to his principal.

2. SAME: *Same: Estoppel.*

Where the agent of a company authorized to fill up a blank application for insurance against fire, does so by writing therein answers as to the condition of the property to be insured, which he knows to be false, the company will be estopped from setting up the falsity of such answers to avoid a policy issued on the application, although the latter contains a clause warranting the answers to be true.

3. SAME: *Action on policy: Time of bringing: Limitation: Waiver.*

A stipulation in a policy of fire insurance that an action thereon shall be brought within a limited time, is valid, but may be waived. Such waiver may be the act of an authorized agent and notwithstanding a declaration in the policy to the contrary, may be proved by oral evidence.

4. SAME: *Same.*

Although a policy of fire insurance stipulates that no action upon it shall be maintained unless brought within six months after the loss or damage occurs, an action brought after the expiration of that time is maintainable where it is shown that the plaintiff did not sue within the time prescribed, because an agent of the insurer authorized to settle the plaintiff's loss, by representations on which he relied, led him to believe that it would be paid without a suit.

APPEAL from *Crawford* Circuit Court.

JOHN S. LITTLE, Judge.

*Brown, Brown & Sandels*, for appellant.

| 52 | 11 |
| 53 | 223 |

| 52 | 11 |
| 58 | 543 |

| 52 | 11 |
| 60 | 538 |

| 52 | 11 |
| 62 | 48 |
| 62 | 353 |

| 52 | 11 |
| 63 | 202 |
| 63 | 211 |

| 52 | 11 |
| 64 | 257 |
| 65 | 62 |

| 52 | 11 |
| 66 | 597 |

| 52 | 11 |
| e71 | 247 |
| 71 | 248 |
| 71 | 299 |

| 52 | 11 |
| 75 | 29 |
| 75 | 100 |
| 76 | 375 |
| 77 | 51 |

| 52 | 11 |
| f79 | 323 |
| f79 | 483 |
| 81 | 510 |
| f82 | 95 |

| 52 | 11 |
| 89 | 29 |

The application formed a part of the policy and was a warranty by the assured, and the company was not bound by any acts or statements made to or by any agent, unless inserted in the contract. All answers were warranted to be true. That a flue is not a chimney is clear. *30 N. Y., 136; 6 W. Va., 425; Angell on Ins., sec. 143.* The acts and statements of Danayski (who was not shown to be an agent) were clearly contrary to any authority which he may have had, and could not bind the company. *30 N. Y., 136; 2 Den., 75; 62 N. Y., 47; 11 Vroom, 568; 50 Penn. St., 331; 24 id., 320; 17 Mo., 247; 53 Tex., 61; 102 Pa. St., 335; 46 Me., 394; Angell on Ins., 143; 10 Barb., 285; 15 Wall., 664; 96 U. S., 544; 22 Conn., 235.* The acts of the so-called agent were never brought to the knowledge of the company, and they cannot be estopped by the unauthorized acts of an agent, of which they never had any knowledge; acts and facts which Brodie refused and failed to communicate.

2. No proof of loss was *ever* furnished by Brodie, when by the contract he agreed to furnish same within thirty days. The act of an adjuster in adjusting the loss was no waiver, for it was expressly agreed that it should not be so considered. The notice of loss and proof of loss within the times specified are conditions precedent. *Angell on Ins., secs. 223, 232a.*

3. The acts of Gardner did not amount to a waiver. He was a special agent and his duties and authority were limited to *adjusting* the loss. One who deals with a limited agent does so at his peril. *Keith v. Hirschberger, 48 Ark.* As to what constitutes a waiver see *6 W. Va., 425; 49 Am. Dec., 77; 95 Penn. St., 51; 75 id., 380; 72 Am. Dec., 622; 19 Penn. St., 401; 79 Am. Dec., 833; 80 id., 199; 18 Wisc., 407; 66 Am. Dec., 308.*

4. Any agreement between parties limiting the period within which suit may be instituted is consistent with public policy and binding, and will be enforced. *1 Blatch. C. C., 280; 14 N. Y., 253; 30 N. Y., 136; 6 Gray (Mass.), 596; 6 W. Va.,*

*425; 7 Gray, 61; 27 Vt., 99; 56 Ga., 266; 31 Pa. St., 449; 6 Ohio St., 599; 25 Ill., 466; 7 Wall., 286; 20 N. H., 73.* The only contrary decisions are *5 McLean C. C., 461*, and *9 Ind., 443.* Plaintiff's action was barred. *91 Ill., 92; 26 La. An., 298.*

5.  There was no waiver by the company of the clause in the policy that the suit should be brought within the time-limited. *49 Am. Dec., 123; ib., 74; 2 How., 481; 34 Am. Dec., 281; 6 W. Va., 425; 30 N. Y., 136; 20 N. H., 73.*

BATTLE, J.  This was an action upon a policy of fire insurance.  One of the defenses to it was, that the policy had been issued on the faith of representations made by Brodie, whose dwelling was insured, which were false, and were declared in the policy, by the express agreement of the parties, to be warranties.

Among the questions propounded to Brodie and answered in his application for insurance, was the following: "Do all the stovepipes go directly into brick chimneys?"  To which was appended the answer, "Yes."  None of the answers to the questions propounded were written by Brodie, but were written by the agent of the insurance company, and signed by Brodie. To this application was appended the following words: "I warrant the answers to each of the foregoing questions to be true," which was also signed by the applicant.  There was evidence adduced to prove what answer was actually made to this question, and how Brodie was induced to sign the application, the answers to the questions, and the warranty; but inasmuch as it is not alleged or indicated in the bill of exceptions that it contains all the evidence adduced at the trial, we assume that there was evidence sufficient to warrant the instructions given by the court to the jury, if they state the law correctly.

Among the instructions given was the following: "As to the first defense the court instructs you:—The jury are instructed that in signing the application for insurance the plaintiff warranted all statements to be true, and that the applica-

tion was a part of the policy of insurance; and that if you find that, in answering the question, 'Do all stovepipes run directly into brick chimneys?' in the affirmative, the plaintiff made a false statement, and that the stovepipes ran directly through the roof, and thereby increased the risk, you are instructed that such false statements vitiated the policy, and you will find for the defendant, unless you find that the company's agent inspected the property and informed plaintiff that the facts warranted such answer." The giving of this instruction is assigned as error.

It has been generally held that, where an agent of an insurance company, authorized to fill up blank applications for insurance, does so by writing false answers, with notice or knowledge of the inaccuracy of the answers written, and thereafter procures the signature of the applicant thereto, after he had given correct answers to the questions asked, and the company afterwards receives the premium and issues a policy, the company will, in the case of loss of the property insured, be estopped from insisting on the falsity of the answers, although warranted by the assured to be true, and failing to avoid the policy on other grounds, will be bound to indemnify the assured for the loss to the extent of the insurance. "And this is true even though the policy provides that when the application is made through an agent of the company, the applicant shall be responsible for such agent's representations." *Insurance Co. v. Wilkinson, 13 Wal., 231; American Life Ins. Co. v. Mahone, 21 Wal., 152; Combs v. Hannibal Ins. Co., 43 Mo., 148; Plumb v. Cataraugus, etc. Ins. Co., 18 N. Y., 392; The Commercial Ins. Co. v. Ives, 56 Ill., 402; Michigan, etc. Ins. Co. v. Lewis, 30 Mich., 41; Germania Fire Ins. Co. v. McKee, 94 Ill., 494; Andes Ins. Co. v. Fish, 71 Ill., 620; The Ætna, etc. Ins. Co. v. Olmstead, 21 Mich., 246; Aurora Fire Ins. Co. v. Eddy, 55 Ill., 213; 2 Wood on Fire Insurance (2d Ed.), pp. 832, 835, 846, 850; May on Insurance (2d Ed.), sec. 143, and cases cited; Bacon on Benefit Societies and Life Insurance, secs. 153, 221.*

In *Insurance Co. v. Wilkinson, 13 Wall., 222*, the court said: "It is not to be denied that the application, logically considered, is the work of the assured, and if left to himself as to such assistance as he might select, the person so selected would be his agent, and he alone would be responsible. On the other hand, it is well known, so well that no court would be justified in shutting its eyes to it, that insurance companies organized under the laws of one State, and having in that State their principal business office, send their agents all over the land, with directions to solicit and procure applications for policies, furnishing them with printed arguments in favor of ·the value and necessity of life insurance, and of the special advantages of the corporation which the agent represents. They pay these agents large commissions on the premiums thus obtained, and the policies are delivered at their hands to the assured. The agents are stimulated by letters and instructions to activity in procuring contracts, and the party who is in this manner induced to take out a policy, never sees or knows anything about the company or its officers by whom it is issued, but looks to and relies upon the agent who has persuaded him to effect insurance as the full and complete representative of the company in all that is said or done in making the contract. Has he not a right to so regard him? * * * The powers of the agent are, *prima facie*, co-extensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company, establishing a local agency, must he held responsible to the parties with whom they transact business, for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal.

"In the 5th Edition of American Leading Cases, after a full consideration of the authorities, it is said: 'By the interested or officious zeal of the agents employed by the insurance companies in the wish to out bid each other and procure customers, they not unfrequently mislead the insured, by a false

or erroneous statement of what the application should contain, or, taking the preparation of it into their own hands, procure his signature by an assurance that it is properly drawn, and will meet the requirements of the policy. The better opinion seems to be that, when this course is pursued the description of the risk should, though nominally proceeding from the insured, be regarded as the act of the insurers.' The modern decisions fully sustain this proposition, and they seem to us founded in reason and justice, and meet our entire approval. This principal does not admit oral testimony to vary or contradict that which is in writing, but it goes upon the idea that the writing offered in evidence was not the instrument of the party whose name is signed to it; that it was procured under such circumstances by the other side as estops that side from using it or relying on its contents; not that it may be contradicted by oral testimony, but that it may be shown by such testimony that it cannot be lawfully used against the party whose name is signed to it."

1 INSUR-
ANCE:
Avoiding
policy: Wai-
ver.

The issue of a policy by an insurance company, with a full knowledge or notice of all the facts affecting its validity, is tantamount to an assertion that the policy is valid at the time of its delivery, " and is a waiver of the known ground of invalidity." From such conduct, the insured might fairly infer that he was protected. If he does not, it is reasonable to presume that he would procure other insurance. It would not be consistent with fair dealing and honesty for the company to undertake to avoid its policy, under such circumstances, when the assured has rested in the belief he was protected, until his property was destroyed, and when that belief is the result of its conduct. It is estopped from doing so. *Manhattan Ins. Co. v. Weill, 28 Grat., 394; Bevin v. Conn., etc., Life Ins. Co. 23 Conn., 254; Combs v. Hannibal Ins. Co., 43 Mo., 148; Van Schoick v. Niagara Fire Ins. Co., 68 N. Y., 434; Peoria, etc., Ins. Co. v. Hall, 12 Mich., 202; Bidwell v. The Northwestern Ins. Co , 24 N. Y., 302; Rattibone v. City Fire Ins. Co., 31 Conn.,*

*193; Phœnix Life Ins. Co. v. Raddin, 120 U. S., 196; Gans v. St. Paul, etc., Ins. Co., 43 Wisc., 108; S. C. 28 Am. Rep., 535; Mechler v. Phœnix Ins. Co., 38 Wisc., 665; Pennsylvania Ins. Co. v. Kettle, 39 Mich., 51; Smith v. Com. Ins. Co., 49 Wisc., 322; Ætna, etc., Ins. Co. v Olmstead, 21 Mich., 246, 254; F. & M. Ins. Co. v. Chesnut, 50 Ill., 111; Geo. Home Ins. Co v. Kinner, 28 Gratt., 88.*

In *Van Schoick v. Niagara Fire Ins. Co., 68 N. Y., 434,* " a policy of fire insurance contained a condition, that 'if a building is insured that is on leased land, the same must be specifically represented to the company and expressed in this policy in writing, otherwise the insurance shall be void.' A building insured was on leased land, and this fact was not expressed in the policy; it was known, however, to defendant's agent, to whom the application for the policy was made. It was held that, as the knowledge of the agent was the knowledge of the defendant, his principal, when it accepted the risk, had information the building stood upon leased ground; that it was to be presumed that defendant had overlooked the condition, and so had forgotten to express the fact in the policy, or that it waived the condition, or held itself estopped from setting it up, as, to presume otherwise, would be to impute to defendant a fraudulent intent in issuing a policy known by it to be invalid." Justice Folger, in delivering the opinion of the court, said : " There is no doubt but that, ordinarily considered, this condition in the policy was a warranty that the building did not stand upon leased land; and that the truth of that warranty became a condition precedent to any liability on the part of the defendant; yet, there is no doubt, too, that a condition in a policy may be waived by the insurer, or, as some cases put it, he is estopped from setting it up, and that such result may be worked by parol, or by acts without words. * * * * It would be imputing a fraudulent intent to the defendant in this case to say, or to think, that they did not mean when they delivered this policy to the plaintiff,

to give him a valid and binding contract of insurance, or that they did not mean that he should believe that he had one, or that they did not suppose that he did so believe. And such imputation can be avoided, only by supposing that it had overlooked this condition, and so forgotten to express the fact as to the building, in writing, upon the policy; or that it waived the condition, or held itself estopped from setting it up. * * * * It is consistent with fair dealing and a freedom from fraudulent purposes, to hold that the one or the other was done; that is, that there was a waiver, or an estoppel."

In *Peoria F. & M. Ins. Co., v. Hall, 12 Mich.*, 202, "the question of estoppel upon the ground of the agent's knowledge of the facts, was very forcibly presented. In that case, the defendant's agent took the plaintiff's application, signed in blank, for insurance upon a stock of goods kept by the plaintiff for sale, to be insured in one policy, and for an insurance on certain buildings, among which was the store in which the goods were kept, to be insured by another policy. At the time when the applications were signed, the plaintiff told the agent that he usually sold gunpowder, and everything kept in a country store, and that he intended to do so. The agent took the applications, signed in blank, and the policies were subsequently issued. The applications were referred to as the ground upon which the policies were issued, and, among other things, specially prohibited the keeping of gunpowder or fireworks for sale or on storage, without written permission in the policy. No permission to keep gunpowder was in, or endorsed upon, the policies, and a loss having occurred, the defendants, among other things, set up a breach of this condition in defense, but the court held that notice to the agent that the assured kept gunpowder for sale, and intended to keep it, was notice to, and the knowledge of the company, and estopped them from setting up the same in defense. 'As to the condition in reference to keeping gunpowder,' said Christiancy, J.,

'there was evidence from which the jury was authorized to find, that the agent knew that it was kept at the time, and was to be kept after the insurance, and that he assented to it, and induced the plaintiff to believe that it would make no difference.' Upon this point the court charged that, 'if plaintiff informed the agent that he kept gunpowder in his store for sale, and the agent intended to insure against keeping it, but neglected to endorse the permission on the back of the policy, such neglect would not make the policy invalid.' The condition did not provide for any indorsement of this kind upon the policy, but the keeping of gunpowder was to render the policy void, 'without written permission in the policy.' To this extent the charge was inaccurate, yet we do not think it can be treated as error of which the company can complain, since we think the plaintiff was entitled to a still stronger charge in his favor. He would have been entitled to a charge that, if the agent knew it was kept, and to be kept, the keeping it would not render the policy void, whether the permission was indorsed, or intended, or neglected to be indorsed or not. But the counsel for the plaintiff in error, insists that the printed condition was notice to the assured of the agent's want of authority to assent to the keeping of gunpowder, etc., and that this assent could be given only by the company itself. This, at first view, would seem plausible and might be sound, but for another principle which lies back of it and defeats its application. The principle to which we allude is, that notice to the agent is notice to his principal. The company must be regarded as knowing what he knew. If he knew that powder was kept at the time of the insurance, or to be kept during its continuance, the company must be regarded as having known it also. They had power to waive the condition, and by taking the premium and issuing the policy with such notice or knowledge, they must be regarded as having waived the condition which prohibited its keeping. It would be a gross fraud in the company to re-

ceive the premium for issuing a policy on which they did not intend to be liable, and which they intended to treat as void in case of loss."

In *Bedwell v. The Northwestern Ins. Co., 24 N. Y., 302,* the court said: " Indeed, it is not easy to perceive why an insurance company, by reason of the formal words or clauses (of a general and comprehensive nature) inserted in a policy, intended to meet broad classes of contingencies, should ever be allowed to avoid liability on the ground that facts, of which the company had full knowledge at the time of issuing the policy, were then not in accordance with the formal words of the contract, or some of its multifarious conditions. If such facts are to be held to be a breach of such a clause, they are a breach *eo instanti* of the making of the contracts, and are so known to be by the company as well as the insured, and to allow the company to take the premium without taking the risk, would be to encourage a fraud. It would, as a legal principle, be equivalent to holding that a warranty of the soundness of a horse is a warranty that he has four legs, when one has been cut off."

2. Same: Estoppel

We, therefore, conclude that the appellant was estopped from taking advantage of the falsity of the answer appended to the question, " Do all stove pipes go directly into brick chimneys?" if, at the time the policy sued on was issued, it, personally, or through its agent, knew or had notice of, the facts which the question was intended to elicit.

The policy sued on contained this language: " It is mutually agreed that no suit or action against this company upon this policy shall be sustainable in any court of law, or equity, unless commenced within six months after the loss or damage shall occur; and if any suit or action shall be commenced after the expiration of said six months, the lapse of time should be taken and deemed conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding;" and a succeeding clause as follows: " No act or

omission of the company, or any act of its officers or agents shall be deemed, construed or held to be a waiver of a full and strict compliance with the foregoing provisions of the terms and conditions of this policy, nor an extension of time to the assured, for compliance, except it be a waiver or extension in express terms, and *in writing*, signed by the president or secretary of the company."

Appellant pleaded these clauses of the policy in defense, and averred that the action was not brought within six months after the loss occurred, and that the time in which it might have been brought had not been extended in express terms, and in writing, signed by its president or secretary, and insisted that it should not be maintained. The court instructed the jury on this point, in effect, that this condition is valid and binding, and that if they found that this action "was instituted more than six months after the loss occurred, they should find for the defendant," unless they found from the evidence that the "defendant company," through an agent, authorized to adjust and finally settle the loss sustained by the plaintiff, before the expiration of six months next after the loss, by statements and representations made by such agent in the course of his agency, led plaintiff to believe that the loss would be paid without suit, and that plaintiff did not sue within the six months because he believed and relied upon such statements and representations. It is insisted that the court erred in giving this instruction.

The condition or stipulation in the policy as to the time in which a suit should be brought on the policy is good and valid. *Riddlesberger v. Hartford Ins. Co., 7 Wall., 386.* But it is like any other condition; it can be waived. There is nothing in it to render the insurance company incapable of dispensing with it, or making a new contract. The same power that enabled it to make the contract requiring it, gives it the right to waive it. It may, at any time it sees fit, give authority to any agent to make agreements, or to waive forfeitures; "and it is not bound to act upon the declaration in its policy that they have

3. SAME: Action on policy: Limitation; Waiver.

no such authority." The waiver is provable by either written or oral evidence, " notwithstanding a declaration in the policy to the contrary." *Insurance Co. v. Norton, 96 U. S., 234, 240; Ins. Co. v. Wolff, 95 U. S , 326, 333 ; St. Paul F. and M. Ins. Co. v. McGregor, 63 Texas, 399, 404; Home Ins. Co. of Texas v. Meyer, 93 Ill., 271, 275, 277; Gladding v. California, etc., Ins. Assn., 66 Cal., 6, 8; Mickey v. Burlington Ins. Co., 35 Iowa, 174, 182; Viele v. Germania Ins. Co., 26 Iowa, 49, 51, 54, 55; Georgia Home Ins. Co. v. Kinner, 28 Gratt, 88; Gans v. The St. Paul, etc., Ins. Co., 43 Wisc., 108 ; Blake v. Exchange, etc., Ins. Co., 12 Gray, 271; Franklin Ins. Co. v. Chicago Ins. Co., 36 Md., 102; S. C, 11 Am. Rep., 469; Carson v. Jessey, etc., Ins. Co., 14 Vroom, 300; S. C., 39 Am. Rep., 584, 591; Bacon on Benefit Societies and Life Insurance, sec. 422 ; Wood on Fire Insurance (2d ed.) sec. 525; Collins v. Ins. Co., 79 N. C., 279.*

4. SAME:
Same.

As said by the Supreme Court of Texas, in *St. Paul F. and M. Ins. Co. v. McGregor, 63 Texas, 404,* " if the course of conduct pursued by the appellant was such as to induce the appellee to believe that the 'loss would be adjusted and paid' without suit, and for this reason suit was not brought within the time prescribed, then, under well-settled principles applicable to such cases, this action may be maintained on the policy even after the expiration of the time therein prescribed." *Ins. Co. v. Lacroix, 45 Texas, 164; Smith v. Ins. Co., 62 N. Y., 86; Ames v. Ins. Co. 14 N. Y., 264; F. and M. Co. v. Chestnut, 50 Ill., 115 ; Insurance Co. v. Hall, 12 Mich., 202 : Grant v. Insurance Co., 5 Ind., 23 ; Ripley v. Ins. Co., 17 how. Pr., 445 ; Killips v. F. Ins. Co., 28 Wisc., 480 ; Curtis v. Ins. Co., 1 Biss., 487.*

Judgment affirmed.