CAPITAL FIRE INSURANCE COMPANY v. JOHNSON.

Opinion delivered March 4, 1907.

INSURANCE—BREACH OF WARRANTY—WAIVER.—Where an insurance company is notified by the insured of an incumbrance on the property and indicates a willingness for the insurance to remain in force, it will be held to have waived any breach of warranty as to such incumbrance.

Appeal from Craighead Circuit Court; *Allen Hughes*, Judge; affirmed.

*C. S. Collins*, for appellant.

The stipulation in the application and policy was that any concealment, misrepresentation, in writing or otherwise, of any fact or circumstance, or any false swearing by the insured, whether before or after the loss, should avoid the policy. As to mispresentations, see *2 Cooley's Briefs on Law of Ins.* 1158; *12 Cush.* (Mass.), 416; 59 Am. Dec. 192. See, also, 9 La. 163.

*Lamb & Caraway*, for appellee.

1. Where buildings are severed, actually or constructively, from the realty, they become personal property. This is settled law. It is also settled that where a vendee goes into possession of real property under a contract of sale, and is in condition to enforce specific performance against the vendor, he is the owner of the property, or has title to meet the requirements of an in-

surance policy having conditions such as the policy sued on here. 35 Mich 481; 31 S. W. 1100; 117 Pa. 460; 35 S. W. 829.

2. A vendor's lien is not such an incumbrance as will defeat a policy of insurance with conditions such as this. 77 Ark. 27. Had there been a breach, it is evident from appellee's letter of June 15, 1906, and the reply thereto, that appellant waived the breach. 52 Ark. 11; 53 Ark. 493.

3. Appellant, having the application before it at the time the policy was issued, and failing to require specific answers to certain interrogatories therein propounded before issuing the policy, must be held to have waived such answers. 3 Ont. 234; 2 P. E. I. 322.

BATTLE, J. This action was brought by A. S. Johnson against the Capital Fire Insurance Company on a policy of fire insurance. The plaintiff alleged that he was the owner of a two-story frame building used as a dwelling house; that on the sixth of February, 1905, he applied to defendant for insurance thereon, and it issued a policy for $1,000, insuring him against loss of his building by fire, lightning, tornadoes and cyclones; that sometime in May, 1905, the building was totally destroyed by fire, when the policy was in full force and effect, and his loss exceeded $1,000.

The defendant, in answer to plaintiff's complaint, alleged that the policy contained the following clauses:

"This entire policy shall be void if the assured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of fraud or false swearing by the insured touching matter relating to this insurance or the subject thereof, whether before or after the loss.

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any contract of insurance; * * * or if the interest of the insured be other than unconditional and sole ownership; or if the subject of the insurance be a building on ground not owned by the insured in fee simple; or if any change, other than by the death of the insured, take place in the interest, title, or possession of the subject of the insurance

(except change of occupancy without increase of hazard), whether by legal process or judgment or by voluntary act of the insured or otherwise.

"If there is or shall. be other prior, concurrent or subsequent insurance (whether·valid or not) on said property, or any part thereof, without the company's written consent indorsed hereon, or if said buildings, or either of them, now is or shall become vacant or unoccupied, or if the hazard shall become increased in any way, whether under knowledge and control of insured or not, or if the property or any part thereof shall be sold or conveyed, or if the property now is or shall become incumbered by mortgage or otherwise, or if any change take place in the title, possession or occupation thereof whatever, or if foreclosure proceedings shall be commenced, or if the interest of the insured now is or shall become any other than a perfect legal and equitable ownership, free from all liens whatever, except as stated in writing herein, or if the building stands on leased ground or land of which the assured has not a perfect title, or if the policy be assigned without the company's written consent hereon, then, and in every such case, this policy shall be absolutely null and void."

And the further clause: "Any fraud or attempt to defraud or deceive on the part of the assured, and any misrepresentations in the proofs or the examination as to the loss or damage shall forfeit all claims under this policy."

That plaintiff at the time of the application for insurance misrepresented the ownership of the property .insured and concealed the title thereof. "That in the proof of loss, dated July 15, 1906, made to defendant, plaintiff swore that the property belonged to himself, and that no other person had any interest therein, when, as a fact, said property did not belong to plaintiff at the time of the fire; that said interest was other than unconditional and sole ownership; that it was on ground not owned by him in fee simple; that since the date of the application a change other than by death of the insured took place in the interest and title of the property without agreement of defendant indorsed on said policy.

"That at the date of his application plaintiff had executed a mortgage on said property, or held the same under some agree-

ment to defendant unknown, but that his title thereto was less than a perfect legal and equitable title and ownership not free from said mortgage.

"That afterwards, in April, 1905, defendant executed another mortgage, or new instrument, the character of which is to defendant unknown, on said property, and that thereby said title became less than a perfect legal and equitable ownership, not free from all liens, all of which was done without the written consent of defendant indorsed thereon; that the allegations in said proof of loss relative to said title and interest were untrue; that at the time of said application a change took place in said title, towit: a mortgage on April 9, 1905, to Charles H. Doyal on said property."

And that he failed to answer questions touching the incumbrance of the property insured.

The facts in this case, as shown by the evidence, are substantially stated by Johnson, in his testimony, as follows:   Johnson bought the house upon which the policy was issued "and had paid for it in full; that he had bought it with the privilege of removing it and had expended $300 in improvements on the building; that afterwards, and before the insurance policy herein sued on was applied for, he contracted to purchase one and a quarter acres of land upon which the building stood, and was to have paid therefor $125; that he went into possession of the land as well as the building; that he enclosed the one and a quarter acres with a fence and expended $25 in clearing up and removing rubbish from it, and also had performed two weeks labor upon it for the same purpose; that he afterwards made a contract to buy the remainder of the forty acres, of which the one and a quarter acres had formed a part, and which was described as the northwest one-fourth of northwest one-fourth of section 27, township 14 north, range sixth east; that he purchased this remaining part of the forty acres after the insurance had been granted on the building; that the entire forty acres, which included the one and a quarter acres on which the building stood, were conveyed to him under one deed, and in the one description, and that he paid one hundred dollars in cash on the purchase price of the land, and gave notes which were described in the deed as a lien in favor of the vendor; that the building was still his separate

and distinct property; that it formed no part of the consideration of the purchase of the land as mentioned in the deed, and that it had been paid for in full, and that it was so understood; that no incumbrances, in the way of vendor's lien or otherwise, attached to the building, but after he had purchased the land and given the notes which were recited in the deed as a lien he notified the insurance company of the transaction in the following letter:

"Lake City, Ark., June 15, 1905.
"Capital Fire Insurance Co.,
          "Little Rock, Ark.
"Gentlemen:

"Since I took out insurance on my house in your company, I have incumbered the land on which it stands. I had made a deal for only one and one-half acres at the time, but before the transfer was perfected I purchased the whole 40 acres, and land notes stand against the farm, but the house is not incumbered, and I want to move the house to town, about one-half mile on dotted lines, as shown in diagram on my lot. I have another good house on my farm, and my large house will bring me $20 per month rent. With your consent will move house about September 1, next, and, if my insurance is affected by transactions, kindly advise, that I may adjust same.

"Very respectfully,
          "A. S. JOHNSON."

That he received in reply this letter:

"Little Rock, Ark., June 15, 1905.
"Mr. A. S. Johnson, Lake City, Ark.
"Dear Sir:

"We are in receipt of yours of the 15th enclosing diagrams and statement that you desire to move your house insured with us to Lake City, and, replying to same, will say that during the time the house is being moved our policy would be void, and when it is moved and put in its new location, if the process of moving has not damaged the property any, we will send to you indorsement covering insurance on building in its new location. You

will kindly advise just as early as the house is in its new location, and if occupied.

"Yours truly,

"THE CAPITAL FIRE INSURANCE CO.

"By G. B. Sawyers, Sec'y."

That the letter he received in reply, to his mind, without any doubt, assured him that the transaction had not in any way affected his insurance. That he rested in this belief until the loss of the property; that at no time was the house ever incumbered by any kind of lien; that the building was worth $1,500; that it cost that much to erect it.

Plaintiff recovered judgment, and the defendant appealed.

In his letter of June 15, 1905, to appellant, Johnson stated the condition of the title to the property insured, except he did not state, as shown by the evidence, that the entire forty acres, including the one and quarter acres on which the house stood, were conveyed to him by deed. The evidence fails to show that any material fact as to title and incumbrance of the property was withheld by this letter from appellant. He asked: "If my insurance is affected by transactions, kindly advise, that I may adjust same." Appellant replied, when the house "is moved and put in its new location, if the process of moving has not damaged the property any, we will send to you indorsement covering insurance on building in its new location." It thereby waived all advantages of misrepresentations as to title and incumbrances. It indicated a willingness for their insurance to remain in full force and effect.

Appellee made no change in his insurance, but relied upon it and permitted it to remain as it was. His property has been destroyed by fire; and appellant is liable for loss under its policy. *Insurance Co.* v. *Brodie,* 52 Ark. 11; *German-American Insurance Co.* v. *Harper,* 75 Ark. 98.

Judgment affirmed.